UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

J. D. THOMPSON III                                          CIVIL ACTION

VERSUS                                                      NO. 14-2440

WASHINGTON PARISH                                           SECTION "B"(2)
GOVERNMENT ET AL.

**REPORT AND RECOMMENDATION;**
**ORDER AND REASONS ON MOTION TO AMEND**

     Plaintiff, J. D. Thompson III, is a prisoner currently incarcerated in the Hunt

Correctional Center ("Hunt") in St. Gabriel, Louisiana.  He filed this complaint pro se

and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Washington Parish

Government, Washington Parish Sheriff's Office, Sheriff Randy Seal, Captain Jim Miller

and Nurse Wanda Jones.  Thompson alleges that while incarcerated in Washington Parish

Jail ("WPJ"), he was subjected to various unconstitutional conditions of confinement and

denied adequate medical treatment.  He seeks injunctive relief and "$50 <u>million</u> dollars

in compensatory damages for mental anguish and pain and suffering." Record Doc. Nos.

9 and 26 (Complaint and Statement of Facts) (emphasis added).

     On September 15, 2015, I conducted a telephone conference in this matter.

Participating were plaintiff pro se; Gary L. Hanes and Georgia Thomas, counsel for

defendants.  Plaintiff was sworn and testified for all purposes permitted by <u>Spears v.

McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

Two motions are pending before me in this matter.  Before the <u>Spears</u> hearing, defendant Washington Parish Government filed a motion to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) and (1) on grounds of failure to state a claim upon which relief can be granted.  Record Doc. No. 22.  Plaintiff filed responses to defendant's motion.  Record Doc. Nos. 32 and 37.  In addition, after the conference, Thompson filed a motion to amend his complaint to expand upon his claim of unconstitutional conditions of confinement.  Record Doc. No. 42.  Plaintiff's testimony during the <u>Spears</u> hearing has been considered in connection with these motions.

## **THE RECORD**

Thompson testified that he is currently incarcerated at Hunt based upon his conviction on June 23, 2015, for a sex offense involving his step-granddaughter for which he is currently serving a sentence of fifty (50) years in prison.  He confirmed that his claims in this case all arise from a time period from October 22, 2013, until June 25 2015, during which he was incarcerated in the Washington Parish Jail as a pretrial detainee awaiting trial on the sex offense charge for which he was ultimately convicted. Thompson acknowledged that he asserts two kinds of claims in this case; the first alleging unconstitutional unsanitary conditions of confinement; and the second that he received inadequate medical care for ailments arising from his exposure to those conditions.[1]

---

[1]Some of Thompson's testimony and written submissions concern allegedly inadequate medical care for spinal injuries Thompson said he suffered in a slip and fall incident in the jail. He confirmed during his

As to his claim that he was subjected to unconstitutional unsanitary conditions, Thompson testified that the jail was infested with black mold and mildew as a result of a roof leak throughout his incarceration.  He stated that jail officials had known about the mold issue since January 2013, but refused to take any action to prevent the risks to inmates of exposure to mold.  "There was mildew, like black mildew . . . that regular cleaning won't remove from the jail," Thompson stated.  He said the mold was in the inmates' showers and dormitories, including in three separate dorms where he was housed, located around the roof and the bases of the walls where water leaked from the roof.

Thompson testified that jail officials brought in special supplies to try to clean the mold, including "bleach and regular cleaning supplies" that were issued to inmates in an attempt to clean the mold. He said these special cleaning efforts occurred daily for a period of about two weeks around June-July 2014, but then the special efforts ceased. Thompson said the strongest cleaning supplies that were used during this two-week period were no longer provided to the inmates, who nevertheless continued to receive the ordinary cleaning supplies that were routinely used to clean the dorms, consisting of "regular mop water," which was provided "every day."

---

testimony, however, that his medical care related to the slip and fall incident is the subject of a separate pending lawsuit he has filed in this court; specifically, Thompson v. Washington Parish Sheriff's Office et al., C.A. No. 14-1787 "N"(5). He acknowledged that his claims in the captioned case do not include anything related to the separate slip and fall incident; that his medical care claim in this case relates only to ailments arising from his exposure to mold; and that he was making references to medical care for his spinal condition in this case only to give the court background as to the similarly poor manner in which all of his medical care was provided while he was in the Washington Parish Jail.

Thompson testified that jail officials called in two outside consulting companies to assess the mold problem in the jail.  He said the collection date for mold samples and inspection by these outside specialists was January 8, 2013, according to documents Thompson had been provided at his request by the jail warden.  He stated that the documents reflect that jail officials received the results of the sampling in May 2014, and the results showed "high and medium" mold presence in the jail.  He confirmed that the special two-week cleaning efforts in the jail occurred after these sampling results were received.

Thompson submitted copies of these documents with his lawsuit papers in this court.  Record Doc. No. 7 (Response to Order at pp. 3-4) and Record Doc. No. 25 (Witness and Exhibit List at pp. 3-4).  As plaintiff testified, the report contained in the documents reflects that the collection date for mold samples and inspection conducted by EMSL Analytical, Inc. of Baton Rouge, Louisiana, was January 8, 2013; jail officials received the results of the sampling in May 2014; and the results showed "high and medium" presence of two mold spore types (Cladosporium and Ulocladium)[2] in the jail.

---

[2]"Cladosporium is a mold that is common in the environment, (including) . . . [i]ndoors, . . . particularly where moisture is present.  Cladosporium is a very rare cause of human illness, but it has . . . been associated with allergies and asthma." Cladosporium, Centers for Disease Control and Prevention, http://www.cdc.gov/fungal/diseases/other/cladosporium.html (page updated June 12, 2015) (visited Oct. 20, 2015). "Ulocladium chartarum is a mold that . . . may result in allergy symptoms in sensitized individuals. It is widely distributed in nature and may also be . . . . found on dead vegetation; in soil, air and dust; but also on food and feedstuffs, and on water-damaged building materials . . . . and is a sign of moisture because it requires water to thrive. . . . It is considered one of the most common mold allergens in the United States." Ulocladium chartarum, compiled by Dr. Harris Steinman (Thermo Fisher Scientific Inc. 2012); http://www.phadia.com/en/Products/Allergy-testing-products/ImmunoCAP-Allergen-Information/Molds-and-other-Microorganisms/Allergens/Ulocladium-chartarum (visited Oct. 20, 2015).

Id., Record Doc. Nos. 7 and 25 at p. 4.  A letter accompanying the report from Chief Deputy Mike Haley dated May 29, 2014, regarding "Conditions of Confinement Concerns," which appears to have been addressed originally to an inmate other than plaintiff, states the following:

> Warden Miller informed me that you are requesting a copy of the test report: <u>Microscopic Examination of Fungal Spores, Fungal Structures, Hyphae, and Other Particulates from Swab Samples</u> (EMSL Method: M041).  A copy of that report is attached.
> Washington Parish government, through its Director of Public Works, Leo Luchessi, contracted with EMSL Analytical, Inc., to conduct an analysis of suspected mold inside the Washington Parish Jail. EMSL responded to Mr. Luchessi with a written report in January 2013. After numerous requests for a copy of the report, I finally received it on May 13, 2014.
> . . . .
> Although the Sheriff is not statutorily responsible for the provision and maintenance of the jail building, Sheriff Seal has taken steps to remedy the obvious mold issue through regular cleaning and the provision of cleaning supplies. Just last week, the Sheriff brought in two different companies to assess the mold issue and to make suggestions. Each stated that regular cleaning would not result in permanent removal of the mold but that a sufficient roof and HVAC system is essential to keep water out of the building and to maintain appropriate air circulation and temperature. The roof and the HVAC system are the responsibility of parish government in the provision of a "good and sufficient" jail.

Id., Record Doc. Nos. 7 and 25 at p. 3.

As to the intensive cleaning efforts in June 2014, Thompson testified, "We cleaned it . . . and tried to do what we were supposed to do, but it always came back. It didn't help any . . . . The damage was within the walls . . . ."  Thompson said his research had revealed that mold emits "a poisonous gas . . . that affects your spinal column and your chest."

Asked what injuries he suffered as a result of his exposure to this mold, Thompson said "severe itching when I was there. . . now I'm having respiratory problems," including "it's hard for me to breathe sometimes . . . I'm short-winded." He also said he is having problems with his spinal cord, but he did not know if those problems were related to his slip and fall in the jail in June 2014, which is the subject of his separate lawsuit. He acknowledged that he did not know if the mold had played any part in his spinal problems.

Thompson confirmed that he had received the medical records I ordered defendants to produce, Record Doc. Nos. 11 and 39, but that he had reviewed only some of them. He confirmed that the medical records he had reviewed were accurate. He said that he had made complaints about the mold issues and asked for medical assistance. He testified that Nurse Wanda Jones at the jail denied him medical treatment for his mold-related problems, especially when he requested to see a doctor about the issue.

Thompson complained that he did not receive adequate care for his itching, breathing and dry-coughing problems resulting from mold exposure. He acknowledged the indications in some of his medical records that he had received numerous medications, as reflected in the records, for pain and other conditions. He said those medications included Tylenol, "sleeping medication, anxiety medication, blood pressure medication, Coumadin," which he described as a blood thinner provided to him for heart problems, including blood clots and atrial fibrillation. He said he was also provided with

the other medications at the Washington Parish Jail that he had been receiving before his incarceration.  He said he was not provided with any medication for his itching because Nurse Jones prevented him from seeing a doctor about the mold issues.

Thompson confirmed the notation in his medical records that on October 2, 2014, he was seen by a doctor at the jail, but he did not know what the reference in the report to providing Thompson with a "medical dose pack" meant.  He estimated that he saw Doctor Thomas while incarcerated in the Washington Parish Jail "maybe about four or five times," but he could not remember the precise dates, although he stated that his visits to the doctor were spread throughout the time he was in the Washington Parish Jail.

Thompson testified that he told Dr. Thomas about the problems he was experiencing from mold exposure, but the doctor did nothing about them.  He also stated that Nurse Jones later told Thompson that the doctor had told her that there was nothing wrong with Thompson resulting from mold exposure.  Thompson claimed that, like his issues with his spinal condition resulting from the slip and fall incident that is the subject of his separate case, Nurse Jones "would tell us something the doctor had said, but then when you do talk to a doctor, . . . the doctor hadn't said anything like that."  Thompson testified that when he spoke to Dr. Thomas about the breathing and itching problems he was having resulting from mold, the doctor said "that's something . . . they gonna have to try to figure out; the sheriff, they trying to work something out. . . ."

## ANALYSIS

### I.   STANDARDS OF REVIEW

### (A)   PRISONER COMPLAINT SCREENING

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly

identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28

U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

(B)   RULE 12(b) MOTION

Two standards emanating from Fed. R. Civ. P. 12(b) apply to the pending motion

to dismiss filed by the Washington Parish Government.  Record Doc. No. 22.  First, Rule

12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject

matter of the plaintiff's claim.  Motions brought under Rule 12(b)(1)

> allow a party to challenge the subject matter jurisdiction of the district court
> to hear a case.  Lack of subject matter jurisdiction may be found in any one
> of three instances:  (1) the complaint alone; (2) the complaint supplemented
> by undisputed facts evidenced in the record; or (3) the complaint
> supplemented by undisputed facts plus the court's resolution of disputed
> facts.
>        The burden of proof for a Rule 12(b)(1) motion to dismiss is on the
> party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the
> burden of proof that jurisdiction does in fact exist.

Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted); accord

Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762-63 (5th Cir. 2011);

Johnson v. Aramco Servs. Co., 164 F. App'x 469, 470 (5th Cir. 2006).

"A Rule 12(b)(1) motion should be granted only if it appears certain that the

plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction."

Davis v. United States, 597 F.3d 646, 649 (5th Cir. 2009) (quotation omitted).  A motion

to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to

dismiss under Rule 12(b)(6).  Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008);

Wells v. Ali, 304 F. App'x 292, 293 (5th Cir. 2008); Dooley v. Principi, 250 F. App'x 114, 115-16 (5th Cir. 2007) (citing Johnson v. Hous. Auth., 442 F.3d 356, 359 (5th Cir. 2006); Benton v. United States, 960 F.2d 19, 21 (5th Cir. 1992)).

Second, Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted.  The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007))).

"The Supreme Court's decisions in Iqbal and Twombly . . . did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a court must 'accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff.'"  Id. at 803 n.44 (quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)) (internal quotation omitted).

The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments. Walch v. Adjutant Gen.'s Dep't, 533 F.3d 289, 293 (5th Cir.

2008).  Contrary to plaintiff's argument, Stuart is not required to attach any supportive materials to her Rule 12(b)(6) motion to dismiss.  Stuart's motion addresses only the sufficiency of the allegations of the complaint as a matter of law, not whether the allegations are true.  Thus, for purposes of the motion, the court accepts "'all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs.'"  Jabary v. City of Allen, No. 12-41054, 2013 WL 6153241, at *3 (5th Cir. Nov. 25, 2013) (quoting Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)).  "With respect to any well-pleaded allegations 'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 664).

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend."  Hernandez v. Ikon Office Solutions, Inc., 306 F. App'x 180, 182 (5th Cir. 2009); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).  However, that general rule does not apply if the proposed amendment would be futile.  Townsend v. BAC Home Loans Servicing, L.P., 461 F. App'x 367, 372 (5th Cir. 2011); Jaso v. The Coca Cola Co., 435 F. App'x 346, 351-52 (5th Cir. 2011) (citing Goodman v. Praxair, Inc., 494 F.3d 458, 466 (4th Cir. 2007); Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 at 714-21 (3d ed. 2004)).

13

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading,[3] and the pending motion to amend is futile.

II.   <u>UNSANITARY CONDITIONS</u>

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his incarceration in WPJ. Thompson was a pretrial detainee at all times that form the basis of his claims in this case. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. <u>McCarty v. Zapata County</u>, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999). In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection

---

[3]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Thompson's allegations do not rise to the level of violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise

15

to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Thompson's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or

pleasant, do not rise to a level of seriousness constituting a constitutional violation. Thompson conceded in his testimony that the only physical problems he suffered as a result of the allegedly unsanitary conditions were itching and minor respiratory discomfort.  His assertion based on his own research that the mold could cause more serious spinal cord problems was wholly speculative and conclusory.  He conceded the probability that any back or spinal difficulties he may be experiencing were caused by the unrelated slip and fall that is the subject of his separate lawsuit.  Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).

Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Thompson's allegations about mold and mildew at the jail fail to establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.  "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").  As the Fifth Circuit recently held in Brauner v. Coody, No. 12-314, 2015 WL 4393788, at *4-5 (M.D. La. July 17, 2015) (Africk, J.), no constitutional violation occurs when showers are cleaned with bleach, and the prisoner was provided a disinfectant spray bottle for his personal use.  The court specifically noted

that failure of prison officials to maintain germ-free showers is not cruel and unusual punishment.

In two other cases, the Fifth Circuit has held that <u>extreme</u>, <u>virtually</u> <u>permanent</u> conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Thompson do not rise to the level of a constitutional violation.  The conditions he experienced in WPJ were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution, and he suffered no serious physical injuries or ailments as a result of any allegedly unsanitary conditions.

Even assuming, though certainly not concluding, that any of the conditions described by Thompson might somehow be considered to have presented a substantial risk of serious harm for purposes of constitutional evaluation, Thompson's own testimony and the documentation he has submitted with his lawsuit establish that no "deliberate indifference" as defined in the case law cited above can be attributed to defendants.  In response to the mold problem, defendants hired an outside firm of experts to investigate, sample and analyze the situation.  The report of the outside experts found the presence of medium to high common kinds of mold spores in the jail.  After the report was received by defendants, special kinds of cleaning efforts were undertaken in an attempt to address the mold problem. Ordinary cleaning efforts continued after the special efforts were concluded.  Defendants did not hide the results of the specialists' evaluation from the inmates.  Instead, they freely apprised inmates, including plaintiff, of the results in writing upon request. Although plaintiff alleges that these efforts were unsuccessful and inadequate, defendants' actions in addressing the mold situation in the

fashion described by plaintiff cannot be characterized as "subjective recklessness" or intentional and knowing disregard of an excessive risk to inmate health or safety required under the law necessary to establish a violation of the constitution.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants are responsible for constitutionally inadequate unsanitary conditions of confinement. For all of the foregoing reasons, plaintiff's complaints in this case about unsanitary conditions of his confinement advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.   MEDICAL CARE

Thompson was a pretrial detainee at all relevant times about which he complains. He alleges that he received inadequate medical care for his itching, minor respiratory and dry-coughing problems resulting from mold exposure.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

(5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), will apply.  <u>Shepherd v. Dallas Cnty.</u>, 591 F.3d 445, 452 (5th Cir. 2009) (citing <u>Bell</u>, 441 U.S. at 539; <u>Scott v. Moore</u>, 114 F.3d 51, 53 (5th Cir. 1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  <u>Estelle</u>, 429 U.S. at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims.  <u>Reeves</u>, 27 F.3d at 176.

As discussed above, an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  <u>Cooper v. Johnson</u>, 353 F. App'x 965, 967 (5th Cir. 2009) (citing

Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153,

159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind.

Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be

held liable "unless the official knows of and disregards an excessive risk to inmate health

or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d

447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison

officials 'refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a wanton

disregard for any serious medical needs.'"  Brewster v. Dretke, 587 F.3d 764, 770 (5th

Cir. 2009) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir.

2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference'
> is a stringent standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action." . . .  The
> "deliberate indifference" standard permits courts to separate omissions that
> amount to an intentional choice from those that are merely unintentionally
> negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of

Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted))

(emphasis added); accord Tamez, 589 F.3d at 770.  "'Subjective recklessness,'" as used

24

in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Thompson must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions plaintiff described, consisting of itching, minor respiratory and dry-coughing problems, presented serious medical needs that posed a substantial risk of harm in his particular circumstances. His testimony about whether the mold had played any part in his spinal cord problems, which is the subject of his separate slip-and-fall lawsuit, was entirely speculative and conclusory and lacked any support in his medical history or WPJ medical records. Thompson clearly did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d

326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014) (high blood pressure readings alone do not indicate serious medical need); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  Thompson acknowledged in his testimony, and the medical records reflect, that he was regularly treated throughout his incarceration at WPJ with medication for his complaints, including Tylenol, "sleeping medication, anxiety medication, blood pressure medication, Coumadin," and other medications that he had been receiving before his incarceration, and that he was seen by a doctor "four or five times" during the 20 months he spent in the WPJ.

Even assuming, however, though certainly without concluding, that Thompson's minor ailments presented a serious medical need for constitutional purposes, he has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail.  Thompson testified and his medical records confirm that he was seen by nurses and doctors at the jail and that medications were prescribed and provided for the minor medical complaints at issue in this case.

This record cannot support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., LaBorde v. Lowe, 471 F. App'x 390, 391 (5th Cir. 2012) (no deliberate indifference to serious medical needs when inmate "received extensive medical care and numerous prescription medications" for his high blood pressure and any other condition for which he requested treatment); Greer v. Tran, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and injuries healed on their own.); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference when prisoner received medical treatment for diabetes, including blood monitoring, medication and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition); Maldonado v. Keesee, 12 F.3d 1098, 1993 WL 543329, at *1 (5th Cir. Dec. 15, 1993) (no deliberate indifference when inmate admittedly was being treated by a doctor at the jail and receiving medication for high blood pressure).

Although Thompson has alleged some delay in receiving medical care in that he did not receive the treatment he thought was necessary quickly enough, and he has expressed dissatisfaction with the overall speed, quality and initial effectiveness of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.  In Thompson's case, the decisions of the jail's health care providers regarding how to treat his minor maladies are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the

continuing and successful medical attention Thompson received during his incarceration in WPJ.

Contentions like Thompson's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also LaBorde, 471 F. App'x at 391 (plaintiff "received extensive medical care and numerous prescription medications; he has not shown any intentional delay or refusal to provide him with medical treatment for his high blood pressure or any other medical condition for which he requested treatment. At most, he has established a disagreement with his treatment, unsuccessful treatment, or negligence, which does not amount to a constitutional violation."); Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Jenkins v. Lee, 84 F. App'x 469, 470 (5th Cir. 2004) (Plaintiff's summary judgment evidence and arguments "reflect nothing more than mere disagreement with the care rendered by [the prison doctor], or, at best, malpractice, which are insufficient to establish a constitutional violation," when the doctor prescribed one medication and

refused plaintiff's requests for a specific, alternate medication, after plaintiff complained of discomfort, lightheadedness, dizzy spells and nausea, and suffered a blackout due to high blood pressure.); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Under these circumstances, Thompson cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

IV.    <u>DEFENDANT'S MOTION TO DISMISS / MONELL</u>

Counsel for Washington Parish Government correctly argues in its motion to dismiss that plaintiff's complaint against Washington Parish Government should be dismissed for failure to state a claim because "plaintiff could not allege a valid <u>Monell</u> claim against Washington Parish regarding the conditions of the [jail] because parish

government does not operate that jail. . . . the sheriff is responsible for the day-to-day operation of the jail, . . . The proper defendant for a <u>Monell</u> claim concerning the conditions of confinement in a parish jail is the parish sheriff . . . ."  Record Doc. No. 22-1 at pp. 2-3 (Memorandum in Support of Motion to Dismiss).

As a matter of law, the employees, functioning and activities of the parish jail in which Thompson was incarcerated, and where the alleged incident upon which his suit is based occurred, are the responsibility of the Washington Parish Sheriff, a separate and distinct legal and political authority that exists apart from the parish.  Under Louisiana law, the administration of a parish jail, including the obligation to care for prisoners, is the exclusive province of the Sheriff, not of the city or parish where the jail is located.  La. Rev. Stat. §§ 15:704, 33:1435(A); <u>Watson v. Graves</u>, 909 F.2d 1549, 1551 (5th Cir. 1990); <u>Thompkins v. Belt</u>, 828 F.2d 298, 304 n.8 (5th Cir. 1987); <u>Gorton v. Ouachita Parish Police Jury</u>, 814 So. 2d 95, 104, 106-07 (La. App. 2d Cir. 2002); <u>Langley v. City of Monroe</u>, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991).

Thus, it is indisputable as a matter of law that Washington Parish Government has no legal responsibility for the claims asserted by Thompson, all of which arise from activities allegedly occurring during his incarceration in the parish jail, where his custody was the responsibility of the Washington Parish Sheriff and his deputies.  Under these circumstances, the motion to dismiss filed by the parish should be granted and all of

plaintiff's claims asserted against Washington Parish Government must be dismissed as legally frivolous.

## V.    NON-SUABLE ENTITY

Thompson has named the Washington Parish Sheriff's Office as a defendant in this matter.  However, the Sheriff's Office is not a legal entity capable of being sued. Martin v. Davis, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (Berrigan, C.J.) (citing  La. Rev. Stat. § 33:361; Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 909 (E.D. La. 2001); Manley v. State, No. 00-1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); Norwood v. City of Hammond, No. 99-879, 1999 WL 777713, at *3 (E.D. La. 1999); Boudreaux v. Bourgeois, No. 98-3809, 1999 WL 804080, at *3 (E.D. La. 1999); Dugas v. City of Breaux Bridge, 757 So. 2d 741, 744 (La. App. 3d Cir. 2000)); accord Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988).   The State of Louisiana grants no such legal status to any law enforcement   office or department.  Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't, 350 So. 2d 236 (La. App. 3d Cir. 1977). The Sheriff's Office is not a "person" for purposes of Section 1983 liability.  Thus, Thompson can assert no claim against the Sheriff's Office under Section 1983.

## VI.    ORDER AND REASONS ON MOTION TO AMEND

Thompson seeks to amend his complaint in this matter for the purpose of expanding upon his previously asserted claims.  The policy of the Federal Rules of Civil

32

Procedure is liberal in favor of permitting amendment of pleadings, and Rule 15(a) evinces a bias in favor of granting leave to amend.  Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.  Stripling v. Jordan Prod. Co., 234 F.3d 863, 872 (5th Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994); Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-98 (5th Cir. 1981)).  Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but such leave "is by no means automatic."  Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted).  Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."  Id.

Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted. . . .  [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)."  Stripling, 234 F.3d at 873 (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 F. App'x 366, 367 (5th Cir. 2010).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'  'Factual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" In Re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)) (footnote omitted).

Thompson's motion to amend is DENIED.  For all of the reasons discussed above, Thompson cannot state a cognizable Section 1983 claim concerning any claim asserted in this case, and his amendment is futile.  For example, the proposed amendment requests a jury trial and includes allegations that defendants were "grossly negligent in managing the people he or she was suppose[d] to supervise," and that "[e]ach defendant are (sic) to be held personally responsible for his or her imperfection (Defect of Judgment)." Record Doc. No. 42 at pp. 2, 3-4 (emphasis added).  For all of the reasons set out above, none of these allegations by Thompson involving defendants' negligence or imperfection rise to the level of violations of his constitutional rights sufficient to state a Section 1983 claim as a matter of law.  Thus, his motion to amend is futile and must be denied on that ground.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that the motion of defendant Washington Parish Government to dismiss plaintiff's claims against it, Record Doc. No. 22, be

GRANTED and that plaintiff's claims pursuant to 42 U.S.C. § 1983 against the Washington Parish Government be DISMISSED WITH PREJUDICE as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ___23rd___ day of October, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

35